Curia, per Dunkiw, Ch.
This court is unanimously of opinion that the judgment of the circuit court, on the demurrer, should be sustained.
Admitting, for the sake of the argument, that all the rules in relation to real estate, under the statute of Uses, and the tenth section of the statute of Frauds, should be applied to personalty, it is very clear, on authority, that the use here was not executed, but that the legal estate continued in the trustee, and that the equitable interest of Josiah Beck, the debtor, was not subject to levy under the executions. The doctrine on this subject was very fully considered in tbe recent case of Laurens vs. Jenney, 1 Spears, 356. “The trust will be executed,” says Mr. Justice Evans, delivering the judgment of the court, “unless the object of creating it would be defeated, as in the case of trusts for married wo • men, and to preserve contingent remainders, or where the trustee has some discretion to be exercised in relation to *584 the estate, or the manner of applying the proceeds ; or, as was said by Chancellor Harper, in Posey vs. Cook, 1 Hill, 414, there must be some object to be effected by the estate’s remaining in the trustees.” Nor, it may be added, will the provisions of the statute of Frauds apply, where the interests of other parties are mixed up with the debt- or’s title. See Doe vs. Greenhill, 4 Barn, and A. 684; 6 E. C. L. Rep. 564.
By the provisions of this settlement, the real and personal estate of Miss Ford was vested in the trustee, to be held for her until the marriage, afterwards for the joint use of the husband and wife, and of the survivor, with contingent remainders over; and it was provided that the real and personal estate might be altered, sold, or exchanged, with the joint consent, in writing, of the trustee and cestui que trusts, provided the proceeds were vested in other property to be held subject to the same trusts. According to the rules indicated in Laurens vs. Jenney, the legal title to the real estate manifestly remains in the trustee. But by the tenth section of the statute of Frauds, 29 Car. 2, C. 3, it is provided that the sheriff “may take in execution all such lands and hereditaments as any other person or persons be seized or possessed in trust for the party against whom execution is so sued, like as the sheriff might or ought to have done, if the said party, against whom execution shall be so sued, had been seized of such lands and hereditaments of such estate as they be seized of in trust for him at the time of the said execution sued.” “This statute,” says Mr. Chief Justice Abbott, in Doe vs. Greenhill, “made a change in the common law,, and up to a certain extent at least, made a trust the subject of inquiry and cognizance in a legal proceeding. We think that the trust that is to be thus treated, must be a clear and simple trust, for the benefit of the debtor; the object of the statute appearing to us to be merely to remove the technical objection arising from the interest in land being legally vested in another person, where it is so vested for the benefit of the debtor.” He proceeded further to remark that “the term was obviously created, not for the benefit Mr. Greenhill, the debtor, but for the benefit and security of Mrs. Greenhill, his mother. *585 She is the principal object of the trust.” It was ruled that this clause of the statute was confined to cases where the trustees are seized or possessed in trust for a defendant alone, and not jointly with another person. Where a court of law thus takes cognizance of a trust, the inquiry will be conducted on the settled principles of equity. In the case under consideration, it is not less obvious than in the case cited, that the husband was not the person for whose benefit the trust was created, but that it was for the benefit and security of the wife. She was the primary and principal object of the trust, and the equitable interests of the husband, whatever they might be, being thus mingled up and united with those of the wife, it is not a case which would fall within the provisions of the statute of Frauds. In Forth vs. Duke of Norfolk and others, 4 Madd. 266, Sir John Leach says, “a judgment creditor has at law, by the statute of Frauds, execution against the equitable freehold estate of the debtor in the hands of his trustee, provided the debtor has the whole beneficial interest; but if he has left a partial interest only in his equitable freehold estate, the judgment creditor has no execution at law, though he may come into a court of equity) and claim there the same satisfaction out of the equitable interest as he would be entitled to at law, if it were legal.” But it has been expressly ruled, (and I am not aware that the correctness of the decision has been impugned,) that these provisions of the statate of Frauds are inapplicable to the equitable interests in personalty. Lord Ellenborough, in Scott vs. Scholey, 8 East, 486, says, “the very silence of that statute, which, while it expressly introduces a new provision in respect to lands and tenements held in trust for the person against whom an execution is sued, says nothing as to trusts of chattel interests, affords a strong argument that those interests were meant to continue in the same plight and situation, in respect of executions, in which both freehold and leasehold trust interests equally stood, prior to the passing of that statute. In the absence, therefore, of any authority in favor of the sale of such an equitable interest under a common law execution against goods, we are of opinion that the sheriff’s return of nulla bond, where the defendant in the execution had no other property besides the trust *586 property in question, was not a false return.” It is due to the argument of the appellant to state, that it was not drawn from the statute of Frauds, but rested entirely on the supposed analogies to the statute of Uses, and some recent decisions of our own courts on that subject. As questions of this character have lately been of frequent recurrence, it is deemed not an unfit occasion to offer some further remarks oil a matter of great practical interest, and on which some diversity of opinion manifestly exists.
It is believed that, in England, no attempt has ever been made to apply the principle of the statute of Henry 8th, to any other than real estate. Even in regard to real estate, as is said by Lord Hardwicke, in Hopkins vs. Hopkins, 1 Atk. 591, the necessities of mankind and reasonable occasions in families, obliged the Judges to give way to the astuteness of conveyancers, and the introduction of three words into the ordinary deeds of settlement defeated altogether the objects of the statute, and left parties to the interference of the Court of Chancery; upon which footing, says his lordship, it has stood ever since.
Cadogan vs. Kennett, 2 Cowp. 432, was decided by Lord Mansfield, in 1776. It is a leading case on another branch of the law. By the marriage settlement of Lord Montfort, his household goods belonging to his house in town, and which were very minutely particularized in a schedule annexed to the settlement, were all conveyed to the plaintiffs, as trustees, for the use of Lord Montfort for life, remainder to Lady Montfort for her life, remainder to the first and other sons of the marriage, in strict settlement. The sheriff had seized the goods under an execution against Lord Montfort, and this was an action of trover to recover the goods. The effort on the part of the defence was, to shew that the deed was fraudulent under the statute of Elizabeth, but neither in that case, nor in any other in the English authorities which the court has found, was it contended that the trust in personalty was executed in analogy to the statute of Uses. Lord Mansfield remarks, “in marriage settlements, it is very common for libraries and plate to be thus settled.” “An argument,” says he, “is drawn from the possession ; but it does not hold in this case. It is a part of the trust that the goods shall continue in the *587 house ; and, for a very obvious reason ; because the furniture of one house will not suit another; and it was the business of the trustees to see tlie goods were not removed.” “How common,” continues the Judge, “are settlements of chattels, and money in the stocks; can there be a doubt but they are good V His Lordship admitted that the debtor had an equitable interest for his life, and that his creditors, in the proper forum, would be entitled to it; butjudgment was entered for the plaintiffs, and the goods were ordered to be delivered to the trustees. Burnell vs. Foley was a case to the same effect, and decided by Lord Mansfield in the same way. It is cited in a note to Cadogan vs. Kennett. But if in the English books no case can be -found in which the principle of the statute of Uses has been applied to the personalty, we are not without authority to the same effect in our own courts. When a trust has been created in personalty, and all the purposes of the trust have ceased or are at an end, the absolute estate is in the person entitled to the last use. From the character of fhe property, possession is a sufficient title, without a formal conveyance. -
Watson, trustee, vs. Pitts, was decided by the Court of Appeals, at this place, in May, 1831, and is reported in 2d McMull. R. 298. By the marriage settlement of John Barlow, certain slaves were conveyed to the trustee, “to the use of, and in trust, nevertheless, for the sole use, benefit and behoof of the said Ann, (wife of John Barlow,) from this date, for and during the term of her natural life.” No disposition of the property was made after the termination of Mrs. Barlow’s life estate. The opinion of the court was delivered by Mr. Justice Johnson. “According to the legal effect of the deed,” says he, “the property is” in the trustee, “until her death, (for the statute for transferring uses into possession, is limited to real estate,) and it is necessary that the legal property should abide in him to enable him to fulfil the trust declared in the deed. A conveyance in trust was necessary to obviate the marital rights of the husband, which would have arisen out of a direct conveyance to herself, and as long as she lives, the same necessity will exist, as she may again take husband.” “Whether, therefore,” says the Judge, “we consider the *588 rights of the trustee, in reference to the legal effect of the deed, or the trusts to be executed under it, the legal estate must abide in him.” The case of Whitfield Jones and Lambert Jones vs. John B. Cole, was decided at the same court. Mrs. Jones, the mother of the plaintiffs, had conveyed certain negroes to a trustee, “intrust for her separate and exclusive use and behoof, during her natural life, and, after her death, to the use of the plaintiffs, or the survivor of them, and their heirs forever, share and share alike.” Mrs. Jones afterwards died, and this action was instituted. “This deed,” says Judge Johnson, delivering the opinion of the court, “like all others, must be so construed that it may take effect according to the intention to be collected from the deed itself. The donor, as recited in the deed, was about to be married to a second husband, and being desirous to secure her property to her own separate use during her life, and to her children by her former marriage, after her death, conveyed the negroes to the trustee,” <£c. After commenting further on the deed, and stating the duties of the trustee, he continues, “the right of possession, as well as the right of property, accrued, therefore, to the plaintiffs, on the instant of the death of the donor. According to the terms of the trust, no act was necessary on the part of the trustee, to invest the cestui que trust with the yight of property, not even a conveyance, for personal estate passed without it.” Without any reference to the statute of Uses, it was held that the plaintiffs were well entitled to maintain the action. These decisions are in entire accordance with the English authorities, and the then well understood law of South Carolina. Neither the statute of Uses, nor the 10th sec. of the statute of Frauds, embrace personal property. “The very silence of the statute,” as. is said in Scott vs. Scholey, “which introduces a new provision as to lands and tenements held in trust, but says nothing as to trusts of chattel interests, affords a strong argument that these interests were meant to continue in the same situation and plight in which both freehold and leasehold trust interests equally stood prior to the passing pf those statutes.” All the legal estate is vested in the trustee, for legal purposes. If the deed be not bona fide, it may fee impeached for fraud, either at common law, or by the *589 statute of Elizabeth. If the instrument be a marriage settlement, and is not recorded, so as to prevent misconception from the ostensible ownership of the cestui que use, it becomes obnoxious to the provisions of our own statutes. But so long as the trust subsists, any equitable interest of the cestui que trust can be reached only through the appropriate tribunals, unless the deed itself violates some principle of law, or wants some of the formalities prescribed by law,
Porcher vs. Gist was decided at Charleston, in 1832. It is not reported. But in Ioor vs. Hodges, Chancellor Harper, discussing the right of the creditors of the husband to levy on property settled under a marriage deed, on the ground that the legal estate had vested in the husband, remarks that, “the first case on the subject is that of Porcher vs. Gist, in which the conveyance was to trustees, for the joint use of husband and wife for life; to the use of the survivor for life; and, after the death of the survivor, to the issue of the marriage. It was held that the property, after the death of the husband, was liable to be taken in execution for the debts of the wife.” The case of Pringle vs. Allen, 1 Hill C. R. 135, was precisely similar, and was decided on the authority of Porcher vs. Gist. On principles of equity, and in a Court of Equity, the interests of Mrs. Gist might very properly be subjected to the satisfaction of her debts, and so it is admitted by Lord Mansfield, in Codogan vs. Kennett. But on what principle can it be said that the legal estate was executed % “The statute of Uses,” said the court, in Watson vs. Pitts, “has no application to trusts of personalty.” The legal estate was in the trustee, until the trusts were at an end. In Gadsden vs. Cappedeville, decided by the Court of Appeals, in Charleston, Feb. 1829, Chancellor Harper says, “I am of opinion that in no case could there be such a partial execution of a use. The estate is one, and must be executed either in the trustee or cestui que trusts. As observed by Lord Hardwicke, in Gibson vs. Rogers, Ambler, 94, this court will not make fractions, and consider them as trustees for only part of the inheritance.” If the use was executed in Mrs. Gist, it was executed also at the same time in the issue of the marriage. But what then was the object of continuing the trustee beyond the continence of the joint estate of the husbaiid *590 and wife? The presumption must be, that some object was intended to be accomplished. We may very well conceive that the object was to secure the property from removal or injury, during the continuance of the life interest. “It was the business of the trustee,” says Lord Mansfield, in Cadogan vs. Kennett, “to see that the goods were not removed and although they were in possession of the person having the life interest, he held them not liable to seizure for his debts. But the parties having (he acknowledged right to dispose of the property, have declared, in plain terms, that the legal estate shall remain in the trustee, and the cestui que use shall have the enjoyment. If this were real estate, it cannot be doubted that, before the statute, the cestui que use would have no estate which could be reached in a court of law. This, then, is the condition and plight of the personal estate, to which the statute does not reach. In Ioor vs. Hodges, Chancellor Harper, commenting on these cases, as well as the more recent cases of Pyron vs. Mood and Ford vs. Caldwell, to which I shall presently advert, says, “the execution of the trust in these cases, seems to be made to depend on the right to possession in the cestui que trust, and the actual transfer of possession.” “Now, in this case,” says he, “I suppose that the stipulation to permit the husband “to have, receive, take and enjoy all the interest, income and profits” of the slaves, entitled him to the possession. There is no question with regard to the actual .possession.” In deference to those decisions, he held that the trust was executed in the husband. But he expressed great doubts on the subject. “If,” says he, “when property is conveyed in trust, for the joint use of husband and wife for life, the use is to be executed in the husband, so as to render it liable at law to his creditors, I do not perceive what purpose it answered by having a trustee to a marriage settlement. If creditors were compelled to come into equity for the purpose of making the husband’s interest liable, there are various equities by which their claims might be rebutted. But still, if the execution of the trusts depends on the right of possession, and the actual possession, I must, according to the decided cases, declare it to be so executed in this instance, so as to render it liable to creditors. It is said in Pyron vs. *591 Mood (continues the Chancellor) that, in equity, if the purchasers had notice of the trusts, the rights of the wife might possibly be protected. But if the property be liable at law, I know of no ground on which equity could interfere. I am bound to follow the law.” He concluded by desiring that the case might be submitted to the appellate tribunal. It was at his instance that the cause was ultimately brought before this court, in order that the decisions on this subject might be reviewed.
In regard to the case of Pyron vs. Mood, it seems very clear that the decision may well be maintained, as the trustee had clearly the power to sell with the consent of the cestui que trust, and the title of the purchaser was'unimpeachable. So in Ford, trustee, vs. Caldwell, the deed was a gross fraud upon creditors, and void by the common law ; but a majority of this court is of opinion that they cannot be safely rested on the principles therein assumed. For myself, I think it best that the rules of the common law, and the practice of the country, as- I suppose it to have existed until 1832, should prevail. Deeds of this character should be construed according to their plain intent and meaning. The legal estate should continue in the person to whom it is transferred, until the property is to be delivered to those for wdiom an absolute estate is provided. If those who are entitled to the intermediate use for life or years, should attempt to remove or destroy the property, there exists no good reason why he to whom the legal estate was transferred, and, probably, in reference to these very contingencies, should not have the authority promptly to interfere, assert his legal rights, and prevent the destruction of the trust property. If, on the other hand, those entitled to the equitable use for life, or any other equitable interest, are indebted, their creditors should resort to the appropriate, forum. “If creditors were compelled to come into equity,’.’ says Chancellor Harper, “for the purpose of making the husband’s interests liable, there are various equities by .which their claims might be rebutted.” It might be added, too, that equity has the power to prescribe conditions by which, while the just rights of creditors are satisfied to the extent of their debtor’s interest, the property will be preserved for those who have the ultimate esv- *592 tate; as in Adrian vs. Cordes, 1 Hill C. R. 154, where the purchaser was required to give security for the forthcoming of the property. In equity, too, the interests of the debtor would be ascertained by judicial authority before they are exposed to sale, whereas, ata sale by the sheriff, of so uncertain an interest, nobody is benefitted but the unscrupulous speculator, whose immediate business it becomes to improve his bargain, and defeat ulterior claims, by removing the object of litigation. It seems to me not consistent with the principles of law, or with good policy, that the onus of seeking the aid of the court of Chancery should be cast on those for whose particular benefit the legal estate was vested in trustees.
It has been pressed upon the court, with much urgency, as well as plausibility, that if a man owns property, under whatever cover it may be, it should be liable to the satisfaction of his debts, and about this there can be no doubt. The only question is, as to the appropriate forum in which relief should be sought. No case can be stronger than where a man buys real estate with his own money, and takes titles in the name of a stranger. The language of the Supreme Court of the United States, in Watkins vs. Holman, 16 Pet. 25, may be well applied to all this class of cases.
“It is not perceived,” says Judge McLean, “why a court of law should regard a resulting trust any more than any other equitable rights; and any attempt to give effect to these rights at law, through the instrumentality of a jury, must lead to confusion and uncertainty.”
It is ordered and decreed, that the judgment of the court below, sustaining the demurrer, be affirmed, and the appeal dismissed.
Johnson and Johnston, Chancellors, with Richardson, Evans, Butler, Wardlaw and Frost, Judges, concurred.